UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: | CASE NO.  00-33721 |
| | CHAPTER  7 |
| BARBARA J. MILAZZO, | Re: ECF NOS. 120 (Motion), |
| | 133 (Order) & 154 (Remand) |
| DEBTOR | |

APPEARANCES:

Edward P. Jurkiewicz, Esq.                    Counsel for Chapter 7 Trustee
Lawrence & Jurkiewicz LLC
486 East Main Street
Torrington, CT 06790

Richard M. Levy, Esq.                         Counsel for CadleRock Joint
Kroll, McNamara Evans & Delehanty LLP         Venture II,L.P.
65 Memorial Road, Suite 300
West Hartford, CT 06107

---

**MEMORANDUM ON REMAND FROM DISTRICT COURT
OF RULING AND ORDER ON MOTION TO APPROVE SETTLEMENT**

Albert S. Dabrowski, United States Bankruptcy Judge

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

Barbara J. Milazzo (hereafter, the "Debtor"), on August 23, 2000 (hereafter, the "Petition Date"), commenced a Chapter 7 bankruptcy case which remains pending before the Court after almost eleven years.  The duly appointed Chapter 7 Trustee, on August 23, 2002, timely commenced an adversary proceeding (Adv. Pro. No. 02-3101) (hereafter, the "Avoidance Action") by the filing of a complaint (hereafter, the "Complaint") seeking to avoid certain alleged prepetition and postpetition transfers from the Debtor to Michael G. Milazzo (hereafter, "Michael"), her non-debtor spouse (together, the "Milazzos").  After years of extensive discovery, the Trustee and the Milazzos negotiated an agreement to settle the Avoidance Action in return for a payment to the bankruptcy estate of $20,000 (hereafter, the "Settlement").  The Trustee then filed a <u>Motion for Authority to Compromise Claim of the Estate and for Approval of Settlement Agreement</u> (hereafter, the "Motion"), ECF No. 120, requesting approval of the Settlement pursuant to Fed. R. Bankr. P. 9019. CadleRock Joint Venture II,L.P. (hereafter, "CadleRock"), a creditor holding almost 99% of the unsecured claims against the bankruptcy estate, then sent the Trustee a letter seeking to "purchase" the right to pursue the Avoidance Action for $22,500.  After the Trustee declined to accept the offer, CadleRock filed an <u>Objection . . . to [the Motion]</u> (hereafter, the "Objection"), ECF No. 125. Through the Objection CadleRock urged the Court to deny the Motion, and compel the Trustee to either accept its offer, or file a notice of intent to sell the relevant cause of action at a sale subject to opportunity to make higher

and better offers pursuant to Section 363(b).

The Court, on March 31, 2009, held a hearing on the Motion and Objection and that same date entered a <u>Ruling and Order on Motion to Approve Settlement</u> (hereafter, the "Approval Order"), ECF No. 133, granting the Motion and overruling the Objection. CadleRock timely appealed the Approval Order to the United States District Court for the District of Connecticut. On September 14, 2009, United States District Judge Robert N. Chatigny, remanded the matter (ECF No. 154; hereafter, the "Remand Order") for further proceedings to provide an opportunity for this Court to articulate (1) its reasons for not requiring an auction and (2) to expand upon its basis for approving the Settlement.[1]

Following the remand, the Court entered an <u>Order on Remand</u>, ECF No. 156, establishing, *inter alia*, a post-remand briefing schedule and setting a date for a hearing in accordance with which CadleRock and the Trustee filed memoranda of law (ECF Nos. 161, 162) addressing the issues set forth in the Remand Order and a <u>Joint Stipulation of</u>

---

[1]In the Remand Order Judge Chatigny specifically stated:

> "On this appeal, Cadlerock argues that the case should be remanded to give the Bankruptcy Court an opportunity to *articulate its reasons for approving the trustee's motion without requiring an auction.* I agree. I also conclude that a remand is in order to give the Bankruptcy Court an opportunity to *articulate its basis for its findings that Cadlerock's continued litigation of the adversary proceeding was unlikely to result in any additional recovery for the estate* and would involve substantial delay."

Remand Order at 2 (Emphasis added; Reference to CadleRock brief omitted).

Facts (hereafter, the "Stipulation"), ECF No. 169.[2] The Court held a hearing on February 9, 2010, after which it took the matter under advisement.

In accordance with the Remand Order, the Court now articulates the basis for its determination that CadleRock's position that the Trustee be required to hold an auction and "sell" the Avoidance Action to the highest bidder is inconsistent with the relevant case law of this Circuit, *i.e.*, "its reasons for approving the trustee's motion without requiring an auction", and further articulates its reasons for concluding that approval of the Settlement was in accordance with the applicable standards.

## II.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant case by virtue of 28 U.S.C. §1334(a); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(H).

## III.    FACTUAL BACKGROUND

The following Findings of Fact, solely for purposes of the present matter, *see* fn. 2, *supra*, are derived from the record of the March 31, 2009 hearing on the Motion, the February 9, 2010 hearing after remand, the Stipulation, and the Court's independent review and noticing of the files and records of the instant case and related adversary proceeding. See Fed. R. Evid. 201 (*Inter alia*, the court may take judicial notice, whether

---

[2] Significantly, neither of the Milazzos was a signatory to the Stipulation; the statements therein are not binding on any of the parties for any purpose other than the present matter.

4

requested or not, at any stage of the proceeding of its own orders and records not subject to reasonable dispute).

The Debtor and Michael have jointly owned their home, located at 70 Swathmore Street, Hamden, Connecticut (hereafter, the "Residence") since May, 1996.  In her bankruptcy petition, the Debtor, in Schedule A (Real Property), listed the fair market value of the Residence as $230,000 and, in Schedule D (Secured Claims), the encumbrances thereon as a first mortgage in the amount of $146,000 and a home equity line of credit in the amount of $100,000 secured by a second mortgage.[3]

The first mortgage was a purchase money mortgage executed in 1996. Thereafter, on March 2, 2000, the Debtor and Michael jointly applied for and obtained a $100,000 home equity line of credit secured by the second mortgage.  Shortly thereafter, on March 13, 2000, the Milazzos drew $100,000 on the line of credit (hereafter, the "Prepetition Draw"). CadleRock and the Trustee have stipulated that Michael used the proceeds to participate in a business venture with a third party, purchasing, rehabilitating and selling a parcel of real property (hereafter, the "Lincoln Street Property"); that the Lincoln Street Property was sold in November, 2000; that Michael made a profit of $26,823 from the venture; that Michael repaid $70,000 of the line of credit in December, 2000; that, around that same time, the Milazzos also purchased a Honda minivan, titled in the name of the Debtor, from the proceeds of the Lincoln Street Property; and that the Debtor was not employed outside of the home at any time during the year 2000.

---

[3]   The Trustee testified that he had reviewed a real estate appraisal and loan statements confirming that such amounts relate to the entire Residence, not just to the Debtor's 50% interest.

5

The Milazzos filed joint federal and state income tax returns for the year 2000. To pay the taxes owed, they drew another $23,000 on the line of credit in April, 2001 (hereafter, "the Postpetition Draw"). *Inter alia*, the Complaint, as amended,[4] seeks avoidance of the Pre and Postpetition Draws pursuant to Bankruptcy Code §§ 548(a) and 549(a), and recovery, pursuant to Bankruptcy Code § 550(a), of the portion of such draws attributable to the estate's interest in the Residence.

Because, as of the Petition Date, the Residence was overencumbered, the Debtor lacked any equity therein. Utilizing the federal exemptions of Bankruptcy Code §522(d), she claimed, in Schedule C (Exempt Property), an exemption of $1.00 for her interest in the Residence. The Debtor's bankruptcy schedules indicate that, in the absence of the home equity line of credit and the transfers made pursuant thereto, the Debtor, as of the Petition Date, would have had $42,000 of equity in the Residence.[5]

CadleRock's claim against the estate arises out of the Debtor's guaranty of a 1991 business loan to an entity known as Melina Enterprises, Inc. (hereafter, "Melina"). Michael, as president of Melina, on July 17, 1991, executed, on behalf of Melina, a term note (hereafter, the "Term Note") in the initial amount of $175,000, payable to Connecticut Savings Bank. See Claim No. 3-1. The Debtor was one of four individuals who, also on July 17, 1991, signed documents personally guaranteeing the Term Note. See Claim No. 3-1; ECF Nos. 78, 81. The Term Note provided for payments of specified amounts each

---

[4]*See* Complaint, filed August 23, 2002, ECF No. 1; Amended Complaint, filed November 22, 2002, ECF No. 12; Second Amended Complaint, filed December 5, 2002, ECF No. 15; and Third Amended Complaint, filed October 6, 2005, ECF No. 73.

[5]  The Residence's fair market value of $230,000, less the $146,000 balance on the first mortgage would leave total equity of $84,000; thus, the value of the Debtor's 50% interest would have been $42,000.

month, with the final payment due July 1, 1996.  Melina defaulted on the Term Note, which

was subsequently acquired by CadleRock on July 25, 1997.  CadleRock, in 1998, initiated

an action in state court against Melina and all guarantors of the Term Note.  Upon the filing

of the Debtor's bankruptcy petition the state court proceedings were initially stayed by the

automatic stay of 18 U.S.C. §362(a). However, CadleRock then sought and was granted

relief from automatic stay to proceed to judgment in state court.

CadleRock has filed an undisputed Proof of Claim (Claim No. 3-1) asserting a

nonpriority, unsecured claim against the estate for $222,073.35, the entire amount due

under the Term Note as of the Petition Date.[6]  CadleRock is, by far, the estate's largest

unsecured creditor, holding almost 99% of the unsecured claims.

## IV.   DISCUSSION

The standards used by the Court in considering whether to approve the Trustee's

Motion depend upon whether the proposed Settlement is considered a compromise subject

to Court approval pursuant to Fed. R. Bankr. P. 9019, or a sale of estate property pursuant

to Bankruptcy Code §363(b). The Motion was prosecuted by the Trustee as a compromise

pursuant to Fed. R. Bankr. P. 9019(a) which provides, in pertinent part:  "On motion by the

trustee and after notice and a hearing, the court may approve a compromise or

settlement."  It is well-established in this Circuit that, "[i]n undertaking an examination of

the settlement, . . . the responsibility of the bankruptcy judge . . . is not to decide the

numerous questions of law and fact raised by appellants but rather to canvass the issues

---

[6]  No evidence was Stipulated or otherwise introduced to indicate how much, if any, of the debt CadleRock
has been able to recover from the other guarantors.

and see whether the settlement falls below the lowest point in the range of reasonableness." In re W.T. Grant Company, 699 F.2d 599, 608 (2d Cir. 1983) (citation and internal quotation marks omitted).

**A.    Under Established Case Law in the Second Circuit the Trustee Cannot be Compelled to Sell the Avoidance Action to a Creditor or Conduct an Auction**.

CadleRock contends that, because it has offered to "purchase" the Avoidance Action for $2,500 more than the Settlement amount , the Trustee's Motion must be treated as a sale of estate property pursuant to §363(b); that the Motion (to compromise) must be denied, and that the Trustee must be ordered  to (i) sell the Avoidance Action to CadleRock at its higher monetary offer, or (ii) conduct an auction and "sell" the Avoidance Action to the highest bidder.

*1.    Limitations on Sale or Assignment of Trustee's Avoiding Powers*

Only the Trustee[7] is authorized by the Bankruptcy Code to bring an action to avoid an allegedly fraudulent or preferential transfer, see, e.g. 11 U.S.C. §§548(a), 549(a), and "[t]he sale or assignment of avoidance claims to an objecting creditor is not permitted if the creditor intends to pursue the claims on its own behalf." In re Boyer, 372 B.R. 102, 105 (D.Conn. 2007), aff'd 328 Fed. Appx. 711 (2d Cir. 2009).

CadleRock seeks to sidestep such prohibition by "expressly agree[ing] that any claims it pursues will be made on behalf of the estate and agree[ing] to remit any and all funds recovered to the Trustee for distribution." Exh. 1. Of course, for all practical

---

[7]  In a Chapter 11 bankruptcy case, the debtor in possession generally exercises the same rights, powers, and duties as a trustee.  11 U.S.C. §1107(a).  Accordingly, discussions and quotations herein referring to the powers and obligations of a debtor in possession are equally applicable to a trustee.

8

purposes, CadleRock as the creditor holding approximately 99% of the unsecured claims in the bankruptcy case, is the estate.

The Second Circuit Court of Appeals (hereafter, the "Second Circuit") has issued a series of opinions (sometimes referred to as the "STN trilogy") delineating the particular and special circumstances in which a bankruptcy court may authorize a creditors' committee or a particular creditor to bring an avoidance action, in a derivative capacity, on behalf of the estate.  See In re STN Enterprises, 779 F.2d 901 (2d Cir. 1985);  In re Commodore Int'l Ltd., 262 F.3d 96 (2d Cir. 2001);  In re Housecraft Industries USA, Inc., 310 F.3d 64 (2d Cir. 2002).

"Because this grant of authority to bring avoidance actions under the various sections of the Bankruptcy Code is specific to the trustee or debtor in possession, cases entertaining a request for a 'transfer' of such right are rare, and are rarely granted."  In re Metropolitan Elec. Mfg. Co., 295 B.R. 7, 12 (Bankr. E.D.N.Y. 2003).  "Assignments of the trustee's unique statutory powers, if not carefully scrutinized and narrowly circumscribed, may too easily result in the improper delegation and dilution of the trustee's primary duty to marshal the debtor's property for the benefit of the estate, and to sue parties for recovery of all property available under state law."  In re Greenberg, 266 B.R. 45, 51 (Bankr. E.D.N.Y. 2001) (citations and internal quotation marks omitted).    A party seeking to *displace* the debtor-in-possession or trustee in an avoidance action already commenced by the debtor-in-possession / trustee faces an even "heavier burden" than one seeking derivative standing to *initiate* such an action.  In re Smart World Technologies, LLC, 423

9

F.3d 166, 177 (2d Cir. 2005).[8]   Accordingly, a creditor seeking authority to "stand in the shoes" of the trustee to prosecute or settle an avoidance claim commenced by the trustee must, at a minimum, satisfy the requirements for derivative standing.

The concept of derivative standing in bankruptcy was first adopted by the Second Circuit in the context of a Chapter 11 case in which the powers of a trustee were exercisable by the debtor in possession.  Such derivative standing (hereinafter, "STN Standing") is analogous to the concept of shareholder derivative standing, whereby shareholders may acquire standing to commence an action, usually against directors or officers for breach of their duties to the corporation, if the corporation itself unreasonably refuses to do so.  See STN, 779 F.2d at 904-905.  Although not expressly authorized by the Bankruptcy Code, the Second Circuit "found an implied, but qualified, right for creditors' committees to initiate adversary proceedings in the name of the debtor in possession under 11 U.S.C. §§ 1103(c)(5) and 1109(b) . . . . [C]ourts have allowed creditors' committees to initiate proceedings only when the trustee or debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing to avoid a preferential [or fraudulent] transfer."  Id. at 904.

The Second Circuit subsequently extended the scope of derivative standing in bankruptcy to encompass certain cases where the debtor in possession or trustee consented (hereafter, "Commodore Standing"):

---

[8]  The issue presented in *Smart World* was, in effect, the "flip-side" of that in the present proceeding.  Here, CadleRock seeks to pursue, and the Trustee seeks to settle, an adversary proceeding commenced by brought by the Trustee;  in *Smart World*, a creditor sought to settle, and the debtor in possession sought to pursue, the debtor's cause of action.  The Second Circuit held that a creditor could not acquire the derivative status necessary to displace the debtor in possession / trustee unless it met the requirements for derivative standing under the *STN* trilogy.

To recap, we hold that a creditors' committee may sue on behalf of the debtors, with the approval and supervision of a bankruptcy court, not only where the debtor in possession unreasonably *fails to bring suit* on its claims, but also where the trustee or debtor in possession <u>*consents*</u>. In the latter situation, however, suit by the creditors' committee must be necessary and beneficial to the resolution of the bankruptcy proceedings.

<u>Commodore</u>, 262 F.3d at 100 (emphasis added).

<u>Housecraft</u> applied the criteria set forth in <u>Commodore</u> to permit a derivative avoidance action by a single creditor in a corporate Chapter 7 case. In <u>Housecraft</u>, the Trustee not only consented to the creditor's status as a derivative plaintiff, but remained an active participant in the litigation as co-plaintiff. The court concluded that such joint prosecution was in the best interest of the estate:

The Trustee's participation as a party is also significant because, unlike the plaintiffs in <u>Commodore</u>, [the creditor-plaintiff] is not replacing the Trustee as a claimant; it is simply assisting him with the litigation. The Agreement requires that [the creditor-plaintiff] and the Trustee confer on decisions concerning the claims to be jointly prosecuted. Consequently, the Trustee has all the rights of a party-plaintiff, including the right to control the course of the litigation with [the creditor-plaintiff] under the supervision of the District Court.[9]

<u>Housecraft</u>, 310 F.3d at 71 (footnote added).

In the present matter, the Trustee has not, as is required for derivative standing under <u>STN</u>, unreasonably refused to bring an avoidance action. See <u>STN</u>, 779 F.2d at 904. He has timely filed such the Avoidance Action and diligently pursued it for almost eight years, engaging in extensive discovery and negotiations culminating in the proposed Settlement, which the Court, in Part IV(B), *infra*, has explicitly found to be reasonable.

---

[9]  In *Housecraft*, "the proceeding was originally brought before the Bankruptcy Court, but . . . the District Court granted a motion to withdraw the reference. . . ." *Housecraft*, 310 F.3d at 66, n.2.

11

Moreover, STN Standing generally arises in a Chapter 11 case where a debtor in possession refuses to bring an action against its principals to avoid a fraudulent or preferential transfer.   See, e.g.  Smart World, 423 F.3d at 176-177 ("STN thus makes clear that derivative standing in the bankruptcy context is analogous to derivative standing in shareholder suits; it arises when the debtor [in possession] unjustifiably refuses to pursue a cause of action. . . . [It] usually involves a claim against the debtor's principals themselves, who refuse to litigate out of self interest.").

The present proceeding arises in a Chapter 7 bankruptcy case where the potential for such conflict of interest is minimized.  Not only is the estate being administered by a trustee, rather than by insiders of a corporate debtor in possession, but CadleRock itself, as the only creditor voting at the Bankruptcy Code §341 meeting of creditors, nominated and elected this particular Trustee to replace the interim trustee.  In addition, the Trustee retained CadleRock's counsel to pursue the avoidance action.[10] And, because the Trustee retained such counsel under a contingency fee agreement, CadleRock's offer to pay the legal fees incurred to continue the litigation does not provide a significant benefit to the estate.  See Smart World, 423 F.3d at 180 ("Finally, we think it significant that SmartWorld's counsel was retained on a contingency basis . . . . meaning that Smart World's pursuit of its adversary claims would have subjected the bankruptcy estate to no risk. . . .  Where a debtor - in - possession['s] . . . counsel has been retained on a

---

[10]   Attorney Jurkiewicz filed an appearance for CadleRock on September 27, 2000 (ECF No. 5).  The Court, on September 23, 2002, granted (ECF  No. 77) the Trustee's Application to Employ Attorney Jurkiewicz as special counsel and, on June 5, 2005, granted (ECF No. 86) Attorney Jurkiewicz's motion to withdraw his appearance as counsel for CadleRock.

12

contingency basis, it will be even more difficult for a party seeking derivative standing to demonstrate that the estate would be better off. . . .").   The Court concludes that CadleRock does not meet the requirements to pursue the Avoidance Action in a derivative capacity under the STN criteria.

Nor has CadleRock satisfied the Commodore criteria to proceed in a derivative capacity.  A bankruptcy court may authorize a creditor or committee to pursue a derivative action under the Commodore / Housecraft criteria only if: (1) the creditor has the consent of the trustee; and (2) the bankruptcy court finds that suit by the creditor (a) is in the best interest of the bankruptcy estate, and (b) is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings.  Commodore, 262 F.3d at 100; Housecraft, 310 F.3d at 70.

Consent of the trustee is the quintessential element of Commodore Standing.  See, also Smart World, 423 F.3d at 176 n.15 ("The Commodore exception, however, is inapplicable here, as Smart World [the debtor in possession] obviously does not consent to [creditor's] standing.").   In the present proceeding, the Trustee not only declines to consent, but actively opposes the sale or assignment of the Avoidance Action to CadleRock, thereby precluding CadleRock from attaining derivative status under Commodore.  See Smart World, 423 F.3d at 176 n.15.

The Second Circuit, in extending derivative status to a Chapter 7 creditor in Housecraft, stressed the significance of the trustee's participation as co-plaintiff in the litigation.  Housecraft, 310 F.3d at 70-71.  The Second Circuit, in Adelphia, again emphasized the importance of the debtor in possession / trustee's continuing participation:

13

> Although STN Enterprises, Commodore and Housecraft expanded the scope
> of derivative standing, our precedent did not undermine either the [debtor /
> trustee's] central role in handling the estate's legal affairs or the court's
> responsibility to monitor for abuses by the parties. It remains "the [debtor /
> trustee's] duty to wisely manage the estate's legal claims," and this duty "is
> implicit in the [debtor / trustee's] role as the estate's only fiduciary."

In re Adelphia Communications Corp., 544 F.3d 420, 424 (2d Cir. 2008) (quoting Smart World, 423 F.3d at 175).  Consequently, a proposal to permit a creditor to pursue an avoidance action, "without the Trustee's supervision and participation, does not pass muster."  Metropolitan Elec., 295 B.R. at 13.

In addition, CadleRock has not met its burden of establishing that pursuit of the Avoidance Action by CadleRock is in the best interest of the bankruptcy estate or is "necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings."  Commodore, 296 F.3d at 100.  On the contrary, pursuit of the litigation by CadleRock would require ongoing supervision and control by the Court and the Trustee. Id.; see,also Adelphia, 544 F.3d at 424; Metropolitan Elec., 295 B.R. at 13.

Permitting the highest bidder at an auction to usurp the Trustee's unique statutory powers not only exceeds the scope of the narrowly defined, judicially created exception for derivative actions, but contravenes both the provisions and the underlying policy of the Bankruptcy Code itself.  Because CadleRock has not satisfied the requirements for derivative standing, its offer to purchase and prosecute the Avoidance Action, by direct sale or through an auction with that purpose in mind, is not an available alternative to the proposed Settlement without the consent of the Trustee. See Boyer, 354 B.R. at 35 (without trustee's consent and participation in pursuing litigation, creditor's offer to

14

purchase the cause of action was not an option available to trustee). For these reasons, the objecting Trustee in this case may not be required to sell the Avoidance Action to CadleRock, to solicit higher offers, or hold an auction. This Court is not at liberty to expand upon the limited circumstances under which a creditor may prosecute an avoidance action established by the Second Circuit in the STN trilogy cases.

> 2.    *Cases Relied on by CadleRock are Inapposite to the Present Proceeding*

CadleRock cites Greenberg and Mickey Thompson, 292 B.R. 415 (9th Cir. B.A.P. 2003), to support its position that the Trustee be required to "sell" the Avoidance Action to the highest bidder.  In addition, CadleRock asked the Court to consider a recent ruling, In re Moore, 608 F.3d 253 (5th Cir. 2010),[11] in which the Fifth Circuit "adopt[ed] the reasoning of Mickey Thompson."  Moore, 608 F.3d at 265.

Greenberg is clearly distinguishable from the present proceeding in that the Chapter 7 trustee of the Greenberg estate, unlike the Trustee herein, favored the creditor's proposal.  Greenberg, 266 B.R. at 50 ("At the hearing, the trustee recommended to the Court that it approve this higher offer.").  Thus, the question presented was whether the trustee may - not must - "sell" the right to pursue an avoidance action.

Similarly, in Mickey Thompson, a 2003 decision by the Ninth Circuit Bankruptcy Appellate Panel (hereafter, the "B.A.P."), relied on extensively by CadleRock, the trustee

---

[11]*See* CadleRock's *Motion for Permission to File Supplemental Brief*, ECF No. 170. (Denied as at the time of this Motion the Court was aware of *Moore* which, as noted herein, adopted *Mickey Thompson,* a case which has already been addressed by both parties in oral argument and briefs).

himself had established a bidding procedure and solicited competing bids. The B.A.P.
held it was error for the bankruptcy court to approve the proposed settlement without
considering an overbid submitted in accordance with the trustee's procedures "in light of
the post-settlement developments *and Trustee's own admission in his reply that an overbid
procedure would be in the best interests of creditors*." Mickey Thompson, 292 B.R. at 422
(emphasis added).

Again, in Moore, the issue presented was whether a Chapter 7 trustee could sell an
avoidance action. The bankruptcy court approved the settlement, based in part on its
conclusion "as a matter of law that the claims could not be sold." Moore, 608 F.3d at 257.
The Fifth Circuit "adopt[ed] Mickey Thompson [holding that the] proposed settlement was
a disposition of estate assets, and Cadle's overbid required the court to consider the
appropriateness of an auction and §363 sale procedures." Moore, 608 F.3d at 266.

Unlike the Avoidance Action in the present proceeding, which arose under §§548
and 549, the avoidance action at issue in Moore was a state-law fraudulent transfer
action[12] brought by the trustee pursuant to "strong-arm" powers of §544(a), and the Fifth
Circuit limited its holding to such claims which arise under nonbankruptcy law:

> We do not address the broader question whether a trustee may sell all
> chapter 5 avoidance powers, such as the power to avoid preferences under
> § 547 *or to avoid fraudulent transfers under § 548.* A sale of § 544(b) actions
> is nothing more than a sale of the trustee's right to bring state law claims

---

[12]   The transactions at issue in the present proceeding are not avoidable under state law. The Debtor's
equity in the Residence, at the time of the transfers, was less than $75,000 and was thus exempted under
Connecticut's homestead exemption. Conn. Gen. Stat. §52-352b(t).  Connecticut's Uniform Fraudulent
Transfer Act, Conn. Gen. Stat. §52-552a, et seq., is not applicable to a debtor's transfer of property that was
exempt under state law. *In re Jones*, 403 B.R. 228, 235-236 (Bankr. D.Conn. 2009). As a creditor, therefore,
CadleRock would have had no grounds for avoiding the transactions at issue had the Debtor not filed her
bankruptcy petition.

existing outside of bankruptcy. . . .

Id. at 261 n.13 (emphasis added).

Neither Mickey Thompson nor Moore considered whether a creditor could pursue avoidance actions for its own benefit, or whether, as in the Second Circuit, they may only be pursued by a creditor authorized by the bankruptcy court to pursue them in a derivative capacity for the benefit of the estate.

Subsequent to Mickey Thompson, however, the Ninth Circuit Court of Appeals addressed such questions and concluded that, without the trustee's consent and the bankruptcy court's approval, a creditor may not pursue the estate's claims:

> To date, we have not squarely addressed the question of whether the creditor of a bankruptcy estate also has standing to assert claims on behalf of the estate. However, we have stated in dicta that, in general, trustees are the exclusive parties possessing the right to sue on behalf of the estate. We have held that under some circumstances, the trustee may authorize others to bring suit, but we implicitly held that the right to bring suit-or choose not to do so-belongs to the trustee in the first instance. See Avalanche Mar., Ltd. v. Parekh ( In re Parmetex, Inc.), 199 F.3d 1029, 1031 (9th Cir.1999) ("Although Defendants are correct that a trustee must generally file [actions on behalf of the estate], we hold that _under these particular circumstances - where the trustee stipulated that the Creditors could sue on his behalf_ and the bankruptcy court approved that stipulation-the Creditors had standing to bring the suit.").
> Other circuits have considered this issue and have consistently held that a bankruptcy trustee is vested with the exclusive power to raise legal claims on behalf of the estate.
> . . .
> We therefore reaffirm our previous reasoning and that of our sister circuits and hold that the bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate.[FN3]

>> FN3. We note that our opinion in this case in no way undermines our ruling in In re Parmetex, Inc., 199 F.3d at 1031, where we held that the creditors of a bankruptcy estate could assert claims on behalf of the estate _when the trustee stipulated that the Creditors could sue on_

17

*his behalf* and the bankruptcy court approved that stipulation.

<u>Estate of Spirtos v. One San Bernardino County Superior Court Case Numbered SPR</u>

<u>02211</u>, 443 F.3d 1172, 1175 -1176 (9th Cir. 2006) (emphasis added; citations other than

<u>Parmetex</u> omitted).  Like the Second Circuit in <u>Commodore</u>, the Ninth Circuit, in <u>Spirtos</u>,

held that the trustee's consent is an essential prerequisite to a creditor's derivative status

to pursue the trustee's claims on behalf of the estate.

CadleRock's reliance on this Court's 2003 ruling in <u>In re Ogalin</u>, Case No. 00-

32944, ECF No. 55 (Memorandum and Order On Motion to Sell Cause of Action), is also

unavailing. <u>Ogalin</u> addressed the question of whether a *consenting* trustee enjoys the legal

ability to make an assignment to a creditor. In <u>*Ogalin,*</u> the Trustee initiated an adversary

proceeding (Adv. Pro. No. 02-3077(ASD)(Avoidance Action pursuant §§ 544 and 548)

against the Debtor's wife, four children, and a family business entity. Unlike the present

case, the Trustee and CadleRock, a creditor of the debtor, agreed to an assignment to

CadleRock of the Trustee's rights in the Avoidance Action in exchange for Cadle's

payment to the Trustee, for the benefit of the bankruptcy estate, of the sum of $4000.00.

Seeking ratification of the Agreement and/or the initiation of a competitive bidding process,

the Trustee filed a *Motion for Authority to Sell Cause of Action at Private Sale and*

*Opportunity to Make Better and Higher Offer* (ECF No. 41, Case No. 00-32944), pursuant

to 11 U.S.C. Section 363(b). Upon consideration of that motion, this Court concluded the

Trustee enjoyed that ability.

CadleRock's reliance on <u>Greenberg</u>, <u>Mickey Thompson</u>  <u>Moore</u> and <u>Ogalin</u> as

supporting its position that the proposed Settlement must be treated as a sale of estate

18

property under Bankruptcy Code §363 and sold to the highest bidder is unpersuasive.  The controlling case law of the Second Circuit makes it clear that a creditor may pursue an Avoidance Action only if it is authorized by the bankruptcy court to do so in a derivative capacity.  In the present proceeding, the prerequisites for such authorization have not been satisfied.

As previously noted, *see* fn 1, *supra*, the Remand Order also provided "an opportunity [for this Court] to *articulate its basis for its findings that Cadlerock's continued litigation of the adversary proceeding was unlikely to result in any additional recovery for the estate* and would involve substantial delay"  Having concluded that CadleRock's lacked standing to purchase and prosecute the Avoidance Action under the particular circumstances of this matter – where, as here, there is an objecting - "not consenting" Trustee,  – whether or not CadleRock's "continued litigation of the adversary proceeding was unlikely to result in any additional recovery for the estate", Approval Order at 5 (finding that CadleRock's "offer" to purchase the Avoidance Action "is unlikely to benefit the estate beyond the initial 10% enhancement"), is not relevant  to the question of whether an auction was appropriate. Nevertheless, these factors, *inter alia*, are discussed, in the Court's articulation of its reasons for approving the Settlement. *See* Part V., Section B, *infra*.

**B.    Approval of the Proposed Settlement**

*1.*    *Applicable Criteria*

The Court next considers the Motion and whether the criteria applicable to a Rule 9019 motion to compromise has been satisfied.

19

> There is little doubt that settlements of disputed claims facilitate the efficient
> functioning of the judicial system.
> . . .
> [C]ourts in this Circuit have set forth factors for approval of settlements
> based on the original framework announced [by the Supreme Court] in TMT
> Trailer Ferry.[13]  Those interrelated factors are: (1) the balance between the
> litigation's possibility of success and the settlement's future benefits; (2) the
> likelihood of complex and protracted litigation, with its attendant expense,
> inconvenience, and delay. . .; (3) the paramount interests of the creditors. .
> .; (4) whether other parties in interest support the settlement; (5) the
> competency and experience of counsel supporting . . . the settlement; (6)
> [any] releases to be obtained by officers and directors; and (7) the extent to
> which the settlement is the product of arm's length bargaining.

In re Iridium Operating LLC, 478 F.3d 452, 455, 462 (2d Cir. 2007) (citations and internal

quotation marks omitted; footnote added).

> In considering whether to approve a proposed settlement, it is not necessary
> for the court to conduct a 'mini-trial' of the facts or the merits underlying the
> dispute. . . . It is not the court's task to determine whether the settlement
> proposed by the parties is the best possible, or fairest, or most appropriate
> resolution of the dispute. Such an assessment would be tantamount to the
> court becoming a principal, rather than a neutral, in the parties' negotiations.
> Rather, the court must do neither more nor less than canvass the issues and
> see whether the settlement falls below the lowest point in the range of
> reasonableness from the perspective of the bankruptcy estate.

In re Hilsen, 404 B.R. 58, 69 -72 (Bankr. E.D.N.Y. 2009) (citations and internal quotation

marks omitted); also see, e.g. Smart World, 423 F.3d at 177 (not mini trial); STN, 779 F.2d

at 905 (same); W.T.Grant, 699 F.2d at 608.

"Compromises are generally approved if they meet the business judgment of the

trustee." In re Indian Motorcycle, Inc., 289 B.R. 269, 283 (1st Cir. B.A.P. 2003).

> The bankruptcy judge should not simply " 'rubber stamp' the trustee's
> proposal." Depoister v. Mary M. Holloway Found. (In re Depoister), 36 F.3d
> 582, 587 (7th Cir.1994). However, "[t]he [bankruptcy] judge ... is not to

---

[13]   390 U.S. 414, 424(1968).

substitute [his] judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." <u>Healthco Int'l</u>, 136 F.3d at 50 n. 5 (internal quotation marks omitted) (alterations in original). "[C]ourts need not conduct an independent investigation in formulating an opinion as to the reasonableness of a settlement; rather, they may give weight to the trustee's informed judgment that a compromise is fair and equitable and to the competency and experience of counsel who support the settlement." <u>In re Altman</u>, 302 B.R. at 425-26.

<u>In re Boyer</u>, 354 B.R. at 30.

    *2.*     *Merits of the Underlying Avoidance Action*

    *a.*     *Bankruptcy Code Section 548(a) - Prepetition Transfer*

The Trustee testified as to the bases for his opinion that the proposed Settlement was within the range of reasonableness. The Stipulation contains several "red flags" to support the Trustee's conclusion that the outcome of litigating the Avoidance Action was far from being a "slam dunk."

The Complaint seeks to avoid, as a fraudulent transfer under §548, one-half of the $100,000 Prepetition Draw on the line of credit. At trial, in order to avoid the prepetition transfer, the Trustee would bear the burden of proving each of the elements of §548(a)(1)(A) (actual fraud) or (B) (constructive fraud). Section 548(a), <u>Fraudulent transfers and obligations</u>, as in effect on the Petition Date, provided:

  (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

  (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted;  or

  (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation;  and

  (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

  (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;  or

  (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. §548 (2000).

Were it not for the line of credit, the Debtor's equity in the Residence would have been $42,000, all of which would have been exempt from claims of creditors (other than those holding consensual or statutory liens thereon) under Connecticut's homestead exemption statute.  That such creditors would have been unable to reach the Debtor's interest in the Residence even in the absence of the prepetition transfer makes the Trustee's burden of proving, under Bankruptcy Code §548(a)(1)(A), that the Debtor made the transfer with the actual intent to defraud her creditors, difficult to establish, at best.

As to the elements of a constructively fraudulent transfer under Bankruptcy Code §548(a)(1)(B), Michael, in his Answer to the Complaint (ECF. No. 86), filed with the Court on November 30, 2005, asserts as an affirmative defense that the Debtor received reasonably equivalent value for the transfer.  Bankruptcy Code §548(d)(2)(A) excludes from its definition of value only "an *unperformed* promise to furnish support." Id. (emphasis added). Several decisions in this Circuit and elsewhere have recognized that actual contributions to household expenses may constitute "reasonably equivalent value" for a

22

transfer. See, e.g. In re Beaudoin, 388 B.R. 6, 11 (D.Conn. 2008), aff'd 321 Fed.Appx. 26

(2d Cir. 2009); In re DiFabio, 2004 WL 5250438 (Bankr.D.Conn. 2004) (NO. 03-21996,

04-2016), aff'd  363 B.R. 343 (D.Conn. 2007); In re Fisher, 296 Fed.Appx. 494, 498 (6th

Cir. 2008).  Since the Stipulation acknowledges that the Debtor was not employed during

2000, it would seem reasonable to expect that, at trial, Michael would offer credible

evidence that he provided the Debtor with "reasonably equivalent value" by providing for

her support and for household expenses.

> b.    Bankruptcy Code Section 549(a) - Postpetition Transfers

The Complaint alleges that the Debtor's equity in the Residence as of the Petition

Date became property of the estate and that one-half of two Postpetition Draws on the line

of credit are avoidable pursuant to §549(a).  Section 549(a), Postpetition transactions, as

in effect on the Petition Date, provided:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee
> may avoid a transfer of property of the estate—
> (1) that occurs after the commencement of the case; and
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
> (B) that is not authorized under this title or by the court.

11 U.S.C.A. §549 (2000).

As a threshold matter, the Court notes that, if the prepetition transfer is not avoided,

the value of the estate's interest in the Residence would be zero, the value of the Debtor's

equity in the Residence as of the Petition Date; under such a scenario, the Postpetition

Draw would not entail a transfer of property of the estate.  If, however, the Trustee were

able to avoid the prepetition transfer and the estate were able to recover the $42,000

equity in the Residence that the Debtor would have had on the Petition Date, it could not

recover more simply because, postpetition, a portion of the Prepetition Draw was paid back and borrowed again.

Even if such reasoning did not preclude recovery under §549, both CadleRock and the Trustee have stipulated:  "In April 2001, the Milazzos took a draw on the [Line of Credit] in the amount of $23,000.  The entire amount of this draw was used to pay the Milazzos 2000 state and federal income taxes."  Stipulation, ¶28.  The Trustee testified that he is of the opinion that the claim to avoid the transaction, to the extent of $11,500, as a postpetition transfer is of no value to the estate:

> A.    When I came up with the settle amount of $20,000 I didn't put any value towards those allegations or to the post-petition claims.
> Q.    Can you explain why?
> A.    . . .
>    Arguably the Debtor should have obtained Bankruptcy Court authority to draw down the line post-petition since the estate was still open and since she hadn't yet received her discharge. But had she requested court authority I believe that would have been granted because she used those funds to my understanding to pay federal and state taxes which she was *jointly and severally liable* on. And arguably if some of those taxes were prepetition, that would have gone to lower the creditor body by getting rid of or satisfying *priority claims*.
>    *So I don't believe, in summary, that after discovery and having given this greater thought that those claims really had any merit.*

Transcript of 3/31/2009 at 21 - 22 (emphasis added).

Under such circumstances, the Court finds reasonable the Trustee's opinion that the postpetition transfers are unlikely to be avoided and that, even if avoided, would result in very little, if any benefit to nonpriority unsecured creditors. And while the Trustee testified that if Cadle's offer was accepted and approved it was "possible" Cadle might

24

recover as much as but no more than $50,000, the Trustee qualified that testimony by noting that in light of the amount of the transfers at issue, the various defenses raised, the complexity of the factual issues to be tried, the anticipated expense and duration of the trial, and the competence and aggressiveness defendant's counsel, it was not realistic to believe a significant additional monetary recovery for the estate would occur. Moreover, CadleRock offered no evidence to support a finding that the estate would eventually benefit in an additional monetary amount.

In light of the risks involved in bringing the Avoidance Action to trial, the Court finds the proposed Settlement not only to be well within the range of reasonableness, but near the top end of that range.

3. *Delay*

As already noted the likelihood of complex and protracted litigation, brings with it "attendant expense, inconvenience, and delay". In re Iridium Operating LLC, supra, 478 F.3d at 462. Here the attendant delay is compounded by CadleRock's proposed pursuit of the post-petition transfer claim component of the Avoidance Action deemed without merit by the experienced Trustee.

Arguing that litigating the Avoidance Action would not delay resolution of the Debtor's bankruptcy case, CadleRock states it would seek consolidation for trial of the Avoidance Action and CadleRock's pending adversary proceeding (Adversary Proceeding No. 02-3061) to deny the Debtor a discharge.[14] The Court's docket indicates that

---

[14]The docket of Adversary Proceeding No. 03-3061 reflects 34 Amended Pretrial Orders and related continuances.

25

CadleRock, on December 18, 2002, had filed such a motion (ECF. No. 19 in Adv. Proc. 02-

3101), but that the matter was "marked off" following Michael's Objection (ECF. No. 22 in

Adv. Proc. 02-3101) on numerous grounds. The circumstances cited in Michael's Objection

remain, making it likely that another motion by CadleRock to consolidate the Avoidance

Action with its pending adversary proceeding would itself give rise to additional contested

matters, thereby further delaying the resolution of the bankruptcy case.

In addition, the issues raised in Michael's Objection to a joint trial of the two

adversary proceedings may result in delay by providing additional grounds for appeals.

> ### *4.*     *Creditors' Objections to the Settlement Proposal*

It is undisputed that CadleRock holds almost 99% of the nonpriority unsecured

claims against the Debtor's estate. As is evident from the discussion, <u>supra</u>, the Court, in

considering whether to approve the Trustee's Motion to compromise, has given due

consideration to the arguments raised in CadleRock's Objection.

> The views of creditors also play a role in the court's assessment of a
> proposed settlement. . . . [However,] '[proper deference to [the creditor's]
> reasonable views' is not the same as saying that the court must defer to the
> creditor simply because the only creditor (or a majority of creditors) does not
> think the settlement is fair." In re Vazquez, 325 B.R. 30, 37
> (Bankr.S.D.Fla.2005).

> In the end, as many courts in this circuit and elsewhere have
> concluded, the positions asserted by creditors are not dispositive, and a
> creditor's objection may be overruled when approval of the settlement is
> warranted. As Chief Judge Craig of [the Bankruptcy Court for Southern
> District of New York] recently observed:

> > It is true that, in determining whether to approve a settlement,
> > "[t]he bankruptcy court should also consider the paramount
> > interest of the creditors and give proper deference to their
> > reasonable views. . . . This does not mean, however, that a

26

> creditor – even a creditor holding the overwhelming majority of claims in the case – may arbitrarily veto a settlement that otherwise satisfies the criteria for approval".
>
> Plaza Equities LLC v. Pauker (In re Copperfield Inv., LLC), 401 B.R. 87, 96 (Bankr.E.D.N.Y.2009) (quoting In re Spielfogel, 211 B.R. 133, 144 (Bankr.E.D.N.Y.1997)). See also Vaughn v. Drexel Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505-07 (Bankr.S.D.N.Y.1991) (where committee of creditors objected, court approved settlement finding that "although [the court] may consider a creditor's objection to the proposed compromise, the objection is not controlling and will not bar approval") (additional citations omitted)

In re Hilsen, 404 B.R. 58, 70-71 (Bankr. E.D.N.Y. 2009) (additional citations omitted).

> Indeed, adoption of a formula which permits a creditor to have "veto power" would permit creditors who wish merely to exact their "pound of flesh" from debtors to overrule the wisdom of an impartial third party engaged to canvas the facts and collect what funds as are available for creditors--namely, the trustee--on little more than a whim.

In re Vazquez, 325 B.R. 30, 37 n.8 (Bankr.S.D.Fla. 2005).

Denying the Motion or treating it like a Section 363 sale is contrary to the STN trilogy and would, in effect, would strip the Trustee of his exclusive right to sue on behalf of the estate and override what this Court views to be the sound wisdom and judgment of the Trustee in negotiating an end to this prolonged Avoidance Action, by a proposed Settlement that appears to be a fair, equitable, and reasonable resolution of that action.

### 5.   *Other Relevant Factors*

As noted in the discussion, Part IV(A), *supra*, because the Trustee has retained counsel under a contingency fee agreement, CadleRock's offer to bear the expense of pursuing the Avoidance Action would not significantly benefit the estate.

The Court also notes that the Trustee, who has been a Chapter 7 trustee since

1997, has considerable experience in litigating and negotiating avoidance actions. He has credibly testified, and CadleRock has not disputed, that the proposed Settlement was the product of arm's length negotiations. As already noted, in apparent recognition of the Trustee's experience and qualifications, CadleRock itself nominated and elected this particular trustee to serve in this case. Permitting CadleRock to prosecute the Avoidance Action would override an experienced the Trustee's considered determination to settle it based eight years of pre-trial discovery and litigation and flies in the face of the public's interest in the prompt, efficient, fair and reasonable settlement of contentious litigation.

Finally, that an experienced Trustee, specifically nominated and elected by Cadle Rock, testified that ". . . I don't believe . . . that after discovery and having given this greater thought that those   [postpetition] claims really had any merit", Transcript of 3/31/2009 at 22, raises a peripheral but important question, unanswered at least directly in the record of this matter, as to CadleRock's purpose in seeking to prosecute part of the Avoidance Action. In this Court's view permitting prosecution or continued prosecution of causes of action without merit, is against public policy. *See In re Boyer*, 354 B.R. 14, 35 (Bankr. D.Conn. 2006), *aff'd* 372 B.R. 102, 105 (D.Conn. 2007), *aff'd on other grounds* 328 Fed. Appx. 711 (2d Cir. 2009). Reasonable settlements should be encouraged. Pursuing claims without merit should not.

## V.    SUMMARY AND CONCLUSION

In accordance with the foregoing discussion, and for the reasons further articulated herein, this Court again concludes that the Trustee cannot be compelled to "sell" the Avoidance Action to CadleRock, or to solicit competing bids at an auction, and that the

proposed Settlement is well within the range of reasonableness, in accordance with which

the Approval Order, ECF No. 133, granting the Motion, ECF No. 120 and approving the

Settlement, over the Objection of CadleRock, ECF No. 125, shall remain in full force and

effect.

Dated: March 31, 2011                                      BY THE COURT


                                                 Albert S. Dabrowski
                                                 United States Bankruptcy Judge